NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHER MARKETING INC., <br><br> Plaintiff, <br><br> v. <br><br> FAIRFIELD GOURMET FOODS CORP., <br><br> Defendant. | Civil Action No.: 15-cv-6793 <br><br> **OPINION** |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on the motion of Defendant Fairfield Gourmet Foods Corp. ("Defendant") (ECF No. 12) to dismiss Plaintiff Richer Marketing Inc.'s ("Plaintiff") Amended Complaint (ECF No. 10, "Compl."). The Court has considered the submissions made supporting and opposing the motion. The motion is decided without oral argument pursuant to Fed. R. Civ. P. 78(b).[1] For the reasons set forth below, Defendant's motion is DENIED.

The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## II. BACKGROUND

In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in Plaintiff's favor.

Defendant manufactures and distributes cookies and other baked goods. (Compl. ¶¶ 5, 8). Plaintiff is a marketing corporation. (Id. ¶¶ 3, 6). From February 15, 2001, through December 31,

---

[1] The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1298 (3d Cir. 1991).

1

2014, Plaintiff represented Defendant in the "product fund-raising trade." (Id. ¶¶ 10, 24). The product fundraising trade is a sector of certain markets in which manufacturers market their products to distributors, who sell the products to non-profit organizations for resale to the public in fundraising campaigns. (Id. ¶¶ 6-7). Manufacturers are sometimes represented by an "independent manufacturer's representative" when dealing with distributors. (Id.).

On February 15, 2001, Plaintiff and Defendant entered into an oral agreement (the "Agreement"), terminable by either party, for Plaintiff to serve as Defendant's exclusive manufacturer's representative in the product fundraising trade. (Compl. ¶ 10). Plaintiff agreed to market Defendant's products and develop Defendant's business in the product fundraising trade in exchange for a five percent commission "on any order from distributors in the product fund-raising trade for Defendant's products, whether the order was placed by Plaintiff or the distributor placed the order directly to Defendant," except for orders placed by two distributors with whom Defendants already had business relationships. (Id. ¶¶ 13-15).

In 2003, Plaintiff learned Defendant had established an account with a distributor in the product fundraising trade (the "2003 Account") without telling Plaintiff, even though Defendant knew Plaintiff had actively pursued this distributor's business on Defendant's behalf for several years. (Compl. ¶ 17). When Plaintiff inquired, Defendant said it would pay Plaintiff only one percent commission on orders from this distributor but would continue to pay five percent commission with respect to all other distributors covered under the Agreement, and promised "this conduct would not occur again." (Id. ¶¶ 18-19). On May 18, 2009, Plaintiff learned Defendant had established accounts with two other distributors (the "2009 Accounts"), again knowing Plaintiff had pursued these distributors for Defendant for years. (Id. ¶¶ 20-21). When Plaintiff inquired, Defendant said it would pay no commission with respect to these distributors. (Id. ¶ 22).

2

Starting in 2010, Plaintiff also "discovered on several occasions that Defendant had been concealing from Plaintiff orders placed through several accounts by distributors in the product fund-raising trade[,]" (the "2010 Accounts") and told Defendant what it had learned. (Id. ¶ 23).

Plaintiff and Defendant mutually terminated the Agreement on December 31, 2014. (Compl. ¶ 24). Before that time, Plaintiff fully performed its obligations under the Agreement, Defendant "continued to give full force and effect to the Agreement" except for the aforementioned nonpayment of certain commissions (id. ¶ 24), and, to Plaintiff's knowledge, Defendant paid the agreed-upon five percent commission on all orders within the product fundraising trade, except for orders coming from the 2003, 2009, and 2010 Accounts. (Id. ¶ 25[2]). Plaintiff contends Defendant "continued to receive orders from all or most" of the 2003, 2009, and 2010 Accounts. (Id. ¶ 26).

Plaintiff filed suit on September 11, 2015. (ECF No. 1). The operative Amended Complaint (ECF No. 10) asserts five claims: breach of contract; breach of the implied covenant of good faith and fair dealing; promissory estoppel; unjust enrichment; and violation of the New Jersey Sales Representative's Rights Act, N.J.S.A. § 2A:61A, et seq. ("SRRA").

### III. LEGAL STANDARD

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of

---

[2] Paragraph 25 reads in full: "Accordingly, aside from the aforementioned accounts, Plaintiff continued to receive the agreed upon commission of five percent (5%) on orders placed through accounts by distributors in the product fund-raising trade pursuant to the Agreement. However, due to Defendant's lack of transparency and history of concealment, Plaintiff is unable to know with any certainty whether Defendant concealed the existence of other accounts or sales activity."

3

the non-moving party. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "A pleading that offers labels and conclusions will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

## IV. DISCUSSION

### A. Timeliness of Claims

Defendant argues Plaintiff's contract, good faith and fair dealing, promissory estoppel, and unjust enrichment claims are time-barred, and that the SSRA claim is barred by the doctrine of laches. The Court disagrees.

#### 1. Statute of Limitations

Because statute of limitations is an affirmative defense, a claim may be dismissed for failure to state a claim on statute of limitations grounds only if it is apparent on the face of the complaint that the claim is time-barred. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). The statutes of limitations for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and unjust enrichment are each six years. N.J.S.A. 2A:14-1. In

general, "a statute of limitations begins to run when all elements of a cause of action are present or, more plainly, 'from the moment of the wrong.'" Amland Props. Corp. v. Aluminum Co. of Am., 808 F. Supp. 1187, 1190 (D.N.J. 1992) (quoting Lopez v. Swyer, 62 N.J. 267, 274 (1973)).[3]

With respect to Plaintiff's contract-based claims, "in the case of installment or continuous contracts, a cause of action arises for each periodic breach that occurs, absent total repudiation." Nat'l Util. Serv., Inc. v. Cambridge-Lee Indus., Inc., 199 F. App'x 139, 142 (3d Cir. 2006) (citing Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 424 (1997)). Thus, claims may be timely even when "the initial breach of a contract occurred outside the statutory period, but successive breaches occurred within it." Id. (citing Cty. of Morris v. Fauver, 153 N.J. 80, 108 (1998)). Repudiation "entails a statement or 'voluntary affirmative act' indicating that the promisor 'will commit a breach' when performance becomes due." In re Estate of Balk, 445 N.J. Super. 395, 401 (App. Div. 2016) (quoting Franconia Assocs. v. United States, 536 U.S. 129, 143 (2002) (citing Restatement (Second) of Contracts § 250 (1981))).

At least some of Defendant's alleged breaches of the Agreement occurred less than six years before Plaintiff filed suit on September 11, 2015. In particular, Plaintiff claims Defendant failed to pay commission on certain orders associated with the 2010 Accounts, both before and after Plaintiff learned in 2010 that Defendant had been concealing orders from these accounts. (Compl. ¶¶ 23-26). It is not apparent on the face of the Amended Complaint that Defendant repudiated the Agreement with respect to the 2010 Accounts.

As for promissory estoppel and unjust enrichment, Plaintiff did not suffer a detriment, an element of both claims, see Toll Bros., Inc. v. Bd. of Chosen Freeholders of Cty. of Burlington, 194 N.J. 223, 253 (2008) (promissory estoppel); Snyder v. Farnam Cos., 792 F. Supp. 2d 712, 723

---

[3] The parties appear to agree New Jersey law applies.

5

(D.N.J. 2011) (unjust enrichment), until Defendant allegedly failed to pay commissions it owed Plaintiff. Thus, the promissory estoppel and unjust enrichment claims are timely, at least with respect to allegedly unpaid commissions on orders associated with the 2010 Accounts, which were not placed until less than six years before Plaintiff filed this lawsuit.

Thus, Plaintiff's contract, good faith and fair dealing, promissory estoppel, and unjust enrichment claims are not subject to dismissal on statute of limitations grounds.[4]

### 2. Laches

Defendant contends the Court should apply the equitable doctrine of laches to prevent Plaintiff from using its SSRA claim to circumvent the statutes of limitations applicable to its other, untimely claims. (Def.'s Br. at 18-19; Def.'s Reply Br. at 8-10). But, as explained above, supra Part IV.A.1, Plaintiff's other claims are not untimely. Thus, the Court will not dismiss the SSRA claim under the doctrine of laches at this time.

## B. Failure to State a Claim

Second, as to the breach of contract and promissory estoppel claims, Defendant argues the Amended Complaint fails to state a claim upon which relief can be granted.

### 1. Breach of Contract

Breach of Contract has four elements: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007).

Defendant contends the Amended Complaint does not allege Defendant breached a

---

[4] Because each claim is timely with respect to at least some alleged unpaid commissions, the Court will not decide, on a motion to dismiss, whether recovery of the other alleged unpaid commissions is time-barred. As such, the Court declines at this time to "enter an order barring Plaintiff's pursuit of any cause of action based on events that occurred prior to September 11, 2009—six years before Plaintiff filed its initial complaint in this action[.]" (Def.'s Reply Br. at 1).

contract with Plaintiff. (Def.'s Br. at 12-13). The Court disagrees. Defendant allegedly repeatedly breached the Agreement with Plaintiff by filling orders from various distributors in the product fundraising trade without paying Plaintiff the agreed-upon five percent commission. Supra Part II. At least some of these breaches occurred less than six years before Plaintiff filed suit, in particular with respect to orders associated with the 2010 Accounts. Supra Part IV.A.1.

Defendant further argues no breach of contract occurred because a novation occurred in 2003, when Defendant reduced the commission associated with the 2003 Account to one percent. (Def.'s Reply Br. at 10-12. A novation is "the substitution of a new contract or obligation for an old one which is thereby extinguished." Fusco v. City of Union City, 261 N.J. Super. 332, 336 (App. Div. 1993). The burden is on a defendant to prove a novation occurred. Id. at 337. The elements of a novation are: "(1) a previously valid contract; (2) an agreement to make a new contract; (3) a valid new contract; and (4) an intent to extinguish the old contract." Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Taxation, 414 N.J. Super. 453, 466 (App. Div. 2010).

Even if the Court were to assume a novation took place in 2003 with respect to the commission due on orders from the 2003 Account (or, for that matter, in 2009 with respect to the 2009 Accounts), nothing in the complaint indicates Defendant even attempted to change the terms of the Agreement with respect to orders associated with the 2010 Accounts. Accordingly, Defendant's novation argument does not warrant dismissal of the contract claim.

2. Promissory Estoppel

The elements of promissory estoppel are: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." Toll Bros., Inc., 194 N.J. at 253.

Defendant argues the Amended Complaint does not allege either a clear and definite

7

promise or a definite and substantial detriment. (Def.'s Br. at 14-16). The Court disagrees. Defendant allegedly promised to pay Plaintiff five percent commission on all orders placed by distributors in the product fundraising trade. (Compl. ¶ 13). This alleged promise is sufficiently clear and definite. In reliance on this promise, Plaintiff claims it expended time, effort, and resources on marketing Defendant's products and procuring accounts with distributors, without proper remuneration. (Id. ¶ 41-42). This alleged detriment is sufficiently definite and substantial.

Thus, dismissal of this claim is not warranted.

V. **CONCLUSION**

For the reasons above, Defendant's motion to dismiss is DENIED.

An appropriate order accompanies this Opinion.

*s/Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**

Dated: August 24, 2017